**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

---

Marcelo S.-M.,

Petitioner,

v.

**ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS**
Civil Case No. 26-3441 (MJD/JFD)

Todd Blanche, et al.,

Respondents.

---

Leah C. Janus, Fredrikson & Byron, Counsel for Petitioner.
Carl Berry, Assistant United States Attorney, Counsel for Plaintiff.

---

This matter is before the Court on Petitioner Marcelo S.-M.'s Petition for Writ of Habeas Corpus ("Pet."). Petitioner claims his detention violates his Fourth Amendment right against unlawful seizure, his Fifth Amendment procedural and substantive due process rights, and the Immigration and Nationality Act ("INA"). (Pet. ¶¶ 43-81.) Respondents counter that Petitioner is subject to mandatory detention under 8 U.S.C. § 1225(b)(2)(A) pending removal proceedings.

## I. FACTS[1]

Petitioner is a citizen of Mexico who has resided in the United States for over 23 years after entering the country without inspection on or around July 2, 2003 to seek a better future for himself. (Id. ¶¶ 2, 19.) Petitioner settled in Minnesota, "establish[ed] deep family, economic, and community roots," and started a small construction business in 2017 that helps support his family. (Id. ¶¶ 2; 24.) Petitioner married his wife in 2014 and together they are raising five U.S.-citizen children between the ages of one and 15. (Id.) Petitioner's mother is a lawful permanent resident who lives with Petitioner in Minnesota. (Id. ¶ 24.)

On May 17, 2026, Petitioner was arrested in Brooklyn Center for misdemeanor DWI. (Id. ¶¶ 3, 20.) The same day, while he was in the Hennepin County Jail, Petitioner was told that he had "visitors," who turned out to be two ICE agents. (Id. ¶ 21.) Petitioner met alone with the agents who inquired about Petitioner's "arrest, criminal history, and immigration status." (Id.)

[1] Facts from the Petition not disputed are deemed admitted. See Paula G. v. Bondi, No. 26-CV-410 (JMB/DLM), 2026 WL 146003, at *1 n.2 (D. Minn. Jan. 20, 2026).

Shortly after this encounter, Petitioner was released. (Id. ¶ 22.) As soon as Petitioner exited the building, the same ICE agents arrested him, "purported to show him an administrative warrant," took him into ICE custody, and transferred him to the Whipple Building in St. Paul, where they further questioned him about his immigration status. (Id.; Doc. 5 (Response) at 2.) After questioning him, ICE agents gave Petitioner a folder containing his Notice to Appear ("NTA"). (Pet. ¶ 22.) Petitioner was then transferred to the Sherburne County Jail, where he remains detained. (Id.)

Petitioner's criminal history consists only of driving-related offenses. (Id. ¶ 23.) In 2016, he was convicted of driving after revocation and in 2023, he was convicted of DWI, accepted responsibility, paid all fines, and completed all court-ordered requirements. (Id.; Doc. 6-3 (Form I-213) at 3.) Proceedings on his current DWI charges remain pending. (Pet. ¶ 20.)

The NTA states that Petitioner was ordered to appear before an immigration judge at Fort Snelling on June 2, 2026. (Doc. 6-1 ("NTA") at 2.) There is no evidence that this hearing ever occurred. However, Supervisory Detention and Deportation Officer Kenneth W. Olson stated, "On June 30, 2026,

Petitioner admitted and conceded to the allegations and charges of removability on the NTA at a hearing before an Immigration Judge." (Doc. 6 ¶ 7.)

Petitioner filed the instant Petition for Writ of Habeas Corpus on July 28, 2026. (Doc. 1.) The case was assigned to the undersigned on July 30, 2026. (Doc. 2.) That day, the Court issued an Order to Show Cause. (Doc. 4.) On August 5, Respondents responded and on August 10, Petitioner replied. (Docs. 5-7.)

## II. DISCUSSION

### A. Jurisdiction

A writ of habeas corpus may be granted to a petitioner who demonstrates he is in custody in violation of the Constitution or federal law. 28 U.S.C. § 2241(c)(3); Hamdi v. Rumsfeld, 542 U.S. 507, 525 (2004) (holding that the Constitution guarantees that the writ of habeas corpus is "available to every individual detained within the United States") (citing U.S. Const., Art. I, § 9, cl. 2). District courts have jurisdiction to hear habeas challenges to immigration-related detention. Zadvydas v. Davis, 533 U.S. 678, 687 (2001).

> It is well established that certain constitutional protections available to persons inside the United States are unavailable to [noncitizens] outside of our geographic borders. But once a [noncitizen] enters the country, the legal circumstance changes, for the Due Process Clause applies to all "persons" within the United States, including

> [noncitizens], whether their presence here is lawful, unlawful, temporary, or permanent.

Id. at 693 (citations omitted). This "distinction between an alien who has effected an entry into the United States and one who has never entered runs throughout immigration law." Id. Petitioner bears the burden to prove detention contrary to law by a preponderance of the evidence. See Belsai D.S. v. Bondi, 810 F. Supp. 3d 1016, 1020 (D. Minn. 2025) (citations omitted).

### B. Effect of Avila v. Bondi on Petitioner's Claims

Respondents argue that Petitioner is subject to mandatory detention pursuant to § 1225(b)(2)(A), as confirmed by the Eighth Circuit in Avila v. Bondi, 170 F.4th 1128 (8th Cir. 2026). (Doc. 5 at 2, 13.)

While the Eighth Circuit's decision in Avila would preclude a statutory claim premised on § 1225, Avila does not foreclose constitutional or statutory claims not raised in that case. The Court thus turns to Petitioner's constitutional arguments.

### C. Petitioner's Arrest

Respondents claim that Petitioner's detention is mandatory under 8 U.S.C. § 1225(b)(2). However, while Respondents invoke § 1225(b)(2) now, they did not arrest Petitioner under that statute. (Doc. 5 at 2; Doc. 6 (Olson Decl.) ¶¶ 5-6.)

Rather, they cited the discretionary detention provisions of 8 U.S.C. § 1226 in the Form I-200 administrative warrant. (Doc. 6-1 (directing the warrant to "[a]ny immigration officer authorized pursuant to sections 236 [8 U.S.C. § 1226] and 287 [8 U.S.C. § 1357] of the Immigration and Nationality Act and part 287 of title 8, Code of Federal Regulations, to serve warrants of arrest for immigration violations").)

Because Respondents represented to Petitioner in this warrant that his arrest was based on § 1226(a), the Court holds Respondents to that representation and considers the arrest under the discretionary detention framework of § 1226. Martha C.G.P. v. Blanche, 26-cv-2308 (DWF/JFD), 2026 WL 1329577, at *2 (D. Minn. May 13, 2026) (citing Francisco M.A. v. Blanche, No. 26-cv-2032 (JRT/EMB), 2026 WL 1229701, at *1 (D. Minn May 5, 2026)). Section 1226(a) prefaces arrest "[o]n a warrant issued by the Attorney General." Thus, to detain a noncitizen under § 1226(a), a warrant is required. Id. at *3 (citing Ahmed M. v. Bondi, No. 25-cv-4711 (ECT/SGE), 2026 WL 25627, at *3 (D. Minn. Jan. 5, 2026)) (collecting cases). But see Picazo Jimenez. v. Blanche, 26-cv-2740-ECT-JFD, Doc. 12 (slip op.) at 3 (D. Minn. June 29, 2026) (holding that language of Form I-

200 "identifies which officers are authorized to conduct the arrest," but not that arrest will occur pursuant to § 1226 or that petitioner was arrested under § 1226).

A Form I-200 is the administrative arrest warrant that authorizes a non-citizen's arrest. The I-200 must be issued "[a]t the time of issuance of the [NTA], or at any time thereafter and up to the time removal proceedings are completed." 8 C.F.R. § 236.1(b). The NTA is the document that initiates removal proceedings. See 8 C.F.R. § 239.1. "Putting both rules together, DHS may arrest a non-citizen using a Form I-200 only if the I-200 issues at the same time or after DHS issues an NTA." Dylan M. v. Blanche, 26-cv-02802 (JMB/LIB), Docket No. 12 (slip op.) at 9 (D. Minn. June 8, 2026) (citing 8 U.S.C. § 1226(a); 8 C.F.R. § 236.1(b)(1)).

Petitioner argues that there is no evidence that the I-200 was issued after the NTA. He also asserts that he was never given a warrant. However, Respondents' exhibits show that Petitioner was served the I-200 warrant on May 17, 2026 at Minneapolis, MN. (Doc. 6-1 at 1 (I-200 certificate of service signed by Deportation Officer S. Liu).)

Here, the Form I-200 and the NTA were issued on May 17, 2026, the same date as Petitioner's arrest. (Docs. 6-1; 6-2.) Unfortunately, the documents do not show that the NTA was generated before or at the same time as the Form I-200

because there is no time stamp on the NTA. Depending upon other evidence in a case, these inconsistencies could weigh in favor of finding the NTA was not properly issued prior to the issuance of the I-200.

However, unlike other immigration habeas cases wherein the respondents file affidavits from ICE officers who know nothing about the case itself, here, the sworn affidavit submitted by Respondents was written by an affiant with personal knowledge of Petitioner's case and when or how the documents were issued or served. (Doc. 6.) Officer Kenneth W. Olson signed the affidavit regarding authenticity of Respondent's exhibits. (Id.) He also signed the I-200 arrest warrant at 5:49 p.m. on May 17, 2026 and the NTA at an unknown time on May 17. (See Docs. 6-1 (I-200); 6-2 (NTA) at 1.) In his affidavit, Olson states the following, which supports finding that the NTA was issued before the warrant:

> 5. On May 17, 2026, ICE/ERO conducted background checks and discovered that the Petitioner was present without authorization. An ICE/ERO Supervisory Detention and Deportation Officer (SDDO) issued a Notice to Appear ["NTA"] and Warrant for Arrest of Alien, Form I-200 for petitioner.
>
> 6. On May 17, 2026, ICE/ERO personally served Petitioner at the Hennepin County Jail with the Form I-200 and transferred him to the Bishop Henry Whipple Federal Building for administrative processing. During processing Petitioner was served with the previously issued NTA.

(Doc. 6 ¶¶ 5-6 (emphasis added).) Olson attested that these statements were "true and correct" and made "under penalty of perjury under the laws of the United States." (Id. at 3.) Although there is no time stamp on the NTA, Olson's reference to "the previously issued NTA" in an affidavit written under penalty of perjury weighs in favor of finding that the NTA was issued before the warrant.

Accordingly, the Court finds that the NTA was issued before the warrant. Because issuance of the NTA, not service, is all that is required, Petitioner was arrested under the authority of a valid I-200 warrant. See 8 C.F.R. § 236.1(b).

Individuals who are detained under 8 U.S.C. § 1226(a) are entitled to a bond hearing. Jennings v. Rodriguez, 583 U.S. 281, 306 (2018) ("Federal regulations provide that aliens detained under § 1226(a) receive bond hearings at the outset of detention.") (citing 8 C.F.R. §§ 236.1(d)(1), 1236.1(d)(1)). "Depriving [Petitioner] of his right to a bond hearing—a protection to which federal regulations plainly entitle him—strikes at the heart of his due process right to be free of arbitrary detention." Souleimane C. v. Blanche, No. 26-cv-2215 (LMP/JFD), 2026 WL 1180075, at *4 (D. Minn. Apr. 30, 2026) (citing Zadvydas, 533 U.S. at 690) ("Freedom from imprisonment—from government custody,

detention, or other forms of physical restraint—lies at the heart of the liberty that [the Due Process] Clause protects.") (brackets in original).

As discussed above, Respondents state that Petitioner received a hearing, but did not file an order from, or hearing transcript of, an immigration hearing. Therefore, the Court has nothing to evaluate related to a hearing. The Court does not even know if the immigration hearing addressed bond. Petitioner does not mention this hearing in either of his briefs. In fact, he asserts that this "is a case in which the complete absence of a hearing creates a substantial risk of erroneous deprivation of liberty. . . ." (Doc. 7 at 9 (distinguishing Connecticut Dep't Pub. Safety v. Doe, 538 U.S. 1 (2003)).)

Thus, the record is confused as to whether Petitioner ever had a bond hearing. It has been this Court's experience that when Respondents have evidence of a hearing, they submit it with their response, usually in the form of an immigration judge's order.

Therefore, in an abundance of caution and to protect Petitioner's statutory and due process rights, the Court finds that Petitioner is entitled to a bond hearing before an immigration judge where Petitioner and his counsel can argue

that Petitioner should be released from custody on bond during the pendency of his immigration proceedings.

Resolution of this issue renders discussion of Petitioner's other arguments unnecessary. See Faysal N. v. Noem, 825 F. Supp. 3d 844, 849 n.3 (D. Minn. Jan. 6, 2026) (when the court's decision on one of petitioner's arguments meant the petitioner's detention was unlawful, the court need not reach other arguments).

## III. ORDER

Accordingly, based upon the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that Petitioner's Petition for Writ of Habeas Corpus **[Doc. 1]** is **GRANTED IN PART as follows:**

1. Respondents are ordered to provide Petitioner with a bond hearing within one week after the issuance of this Order;

2. Respondents are ordered to file notice of such bond hearing directly with the Court within two (2) hours of its scheduling[2];

3. Notice of the bond hearing must give Petitioner and/or his counsel a reasonable time to prepare;

---

[2] The purpose of this is to provide timely notice to Petitioner's counsel so that counsel can prepare for the bond hearing and/or find an immigration law attorney to represent Petitioner at the hearing.

4. The Immigration Judge is prohibited from denying the opportunity for a bond hearing based on a purported lack of jurisdiction;

5. If a bond hearing takes place that results in Petitioner's release, Respondents are ordered to:

   a. Release Petitioner into Minnesota;

   b. At a safe time and place communicated at least two (2) hours in advance to Petitioner's counsel; and

   c. With all of Petitioner's personal effects in Respondents' possession, such as Petitioner's driver's license, immigration papers, passport, cell phone, keys;

6. If a bond hearing does not take place within one week, Respondents are ordered to immediately release Petitioner from custody into Minnesota with the same conditions of release described in ¶ 5;

7. Within 48 hours of the conclusion of the bond hearing or Respondents' decision to release Petitioner from custody, Respondents must file a status report with the Court detailing the results of the Bond Hearing or its actions related to release; and

8. Any motion for attorney fees and costs pursuant to the Equal Access to Justice Act must be filed within 21 days of entry of judgment in this matter, along with a well-reasoned memorandum of authorities explaining why an award of fees and costs is warranted.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated: September 10, 2026

s/ Michael J. Davis
Michael J. Davis
United States District Court